UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| GASOLINE AND AUTOMOTIVE SERVICE DEALERS OF AMERICA, INC., on behalf of its members and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CHAMPION LABORATORIES, INC., PUROLATOR FILTERS N.A. L.L.C., HONEYWELL INTERNATIONAL INC., WIX FILTRATION PRODUCTS, CUMMINS FILTRATION INC., THE DONALDSON COMPANY, BALDWIN FILTERS INC., BOSCH U.S.A., MANN + HUMMEL U.S.A., INC., ARVINMERITOR, INC. and UNITED COMPONENTS, INC.<br>                       Defendants. | 308CV00729 VLB<br>Case No. 3:08CV729(VLB)<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Gasoline and Automotive Service Dealers of America, Inc. ("GASDA" or "Plaintiff"), by and through its undersigned counsel, brings this action for injunctive relief and costs of suit under the antitrust laws of the United States against Defendants (defined below) and, upon personal knowledge with respect to its own acts and upon information and belief with respect to all other matters, alleges in its complaint as follows:

## SUMMARY OF CLAIMS

1. This case involves a massive conspiracy among the largest manufacturers of oil, air, fuel and transmission filters in the aftermarket *(i.e.*, the market for replacement

1

filters) ("Filters") to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States, in violation of Section 1 of the Sherman Act.

2. A substantial portion of the allegations contained herein, particularly with respect to the specifics of collusive meetings and agreements between and among the Defendants and their co-conspirators, are based on recorded conversations and the personal knowledge of, and information provided by, a senior sales executive who was employed by two of the Defendants during the Relevant Time Period (defined below) ("Confidential Informant").

3. According to the Confidential Informant, Defendants conspired and agreed to coordinate prices, rig bids and allocate customers from at least January 1, 1999 to the present ("Relevant Time Period"). Through meetings at industry events and elsewhere and the exchange of confidential pricing materials, Defendants unlawfully agreed to the magnitude and timing of price increases, among other things, throughout the Relevant Time Period.

4. GASDA is the professional trade group serving Connecticut area gasoline retailers, body shops, and independent repair shops and has its offices at 78 Harvard Avenue, Stamford, CT. GASDA's members purchased Filters that were manufactured by Defendants during the Relevant Time Period.

5. Because of Defendants' unlawful conduct, GASDA's members have been forced to pay supracompetitive prices for Filters manufactured by Defendants and, as a result, have suffered antitrust injury to their business or property.

6. Plaintiff brings this lawsuit on behalf of its members that purchased Filters manufactured by Defendants during the Relevant Time Period. This action is brought under Section 1 of the Sherman Act to enjoin Defendants' anticompetitive conduct.

## JURISDICTION AND VENUE

7. Plaintiff brings this action pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, to prevent and restrain further anticompetitive conduct by Defendants and to recover the costs of this suit, including reasonable attorneys' fees, based on Defendants' violation of Section 1 of the Sherman Act, 15 U.S.C. §1, as alleged in this Complaint.

8. This Court has jurisdiction over the claims alleged herein under 28 U.S.C. §§ 1331 and 1337.

9. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) and (c) and 15 U.S.C. §§ 15(a) and 22 because during the Relevant Time Period, Defendants resided, transacted business, were found, or had agents in this district, and because a substantial portion of the affected interstate trade and commerce described herein has been carried out in this district.

## INTERSTATE COMMERCE

10. The activities of Defendants and their co-conspirators, as described herein, were within the flow of, and substantially affected, interstate commerce.

11. During the Relevant Time Period, Defendants manufactured and sold and/or distributed substantial quantities of Filters in a continuous and uninterrupted flow of interstate and international commerce to customers located throughout the United States.

12.

## THE PARTIES

### A. Plaintiff

13. GASDA is the professional trade group serving Connecticut area gasoline retailers, body shops, and independent repair shops and has its offices at 78 Harvard Avenue, Stamford, CT. GASDA's members purchased Filters that were manufactured by Defendants during the Relevant Time Period.

### B. Defendants

14. Champion Laboratories, Inc. is a corporation headquartered at Albion, Illinois, with a business address at 200 S. Fourth St., Albion, IL 62806. Champion Laboratories, Inc. manufactured and sold Filters in the United States during the Relevant Time Period.

15. United Components, Inc. is a corporation headquartered in Evansville, Indiana, with a business address at 14601 Highway 41 N., Evansville, IN 47725-9357. Champion Laboratories, Inc. is a wholly-owned subsidiary of United Components, Inc. Champion Laboratories, Inc. and United Components, Inc. are herein collectively referred to as "Champion."

16. Purolator Filters N.A. L.L.C. is a limited liability corporation with its principal place of business at Fayetteville, North Carolina, and a business address at 3200 Natal St., Fayetteville, NC 28306-2845. Purolator Filters N.A. L.L.C. manufactured and sold Filters in the United States during the Relevant Time Period. Purolator Filters N.A. L.L.C. is a joint venture between Bosch U.S.A. and Mann + Hummel U.S.A., Inc.

17. Bosch U.S.A. is a company headquartered in Broadview, Illinois, with a business address at 38000 Hills Tech Drive, Farmington Hills, MI 48331.

18. Mann + Hummel U.S.A. is a company headquartered in Portage, Michigan, with a business address at 6400 S. Sprinkle Road, Portage, MI 49002.

19. ArvinMeritor, Inc. is a corporation headquartered in Troy, Michigan, with a business address at 2135 West Maple Road, Troy, MI 48084. Prior to April 2006, Purolator Filters N.A. L.L.C. was owned by ArvinMeritor, Inc. Purolator Filters N.A. L.L.C., Bosch U.S.A., Mann + Hummel U.S.A. and ArvinMeritor, Inc. are herein collectively referred to as "Purolator."

20. Honeywell International ("Honeywell") is a corporation headquartered at Morristown, New Jersey, with a business address at 100 Columbia Road, Morristown, NJ 07962. Honeywell manufactured and sold Filters in the United States during the Relevant Time Period. Honeywell International Consumer Products Group is a division of Honeywell located in Danbury, Connecticut, and is responsible for the manufacture and sale of Filters, principally under the FRAM® brand.

21. Wix Filtration Corp. LLC ("Wix") is a limited liability company headquartered in Gastonia, North Carolina, with a business address at One Wix Way, Gastonia, NC 28054. Wix manufactured and sold Filters in the United States during the Relevant Time Period.

22. Cummins Filtration Inc. ("Cummins"), a wholly-owned subsidiary of Cummins, Inc., is headquartered in Nashville, Tennessee, with a business address at 2931 Elm Hill Pike, Nashville, TN 37214. Cummins manufactured and sold Filters in the United States during the Relevant Time Period.

23. The Donaldson Company ("Donaldson") is a corporation headquartered in Minneapolis, Minnesota, with a business address at 1400 West 94th St., Minneapolis, MN

55431. Donaldson manufactured and sold Filters in the United States during the Relevant Time Period.

24.   Baldwin Filters, Inc. ("Baldwin") is a corporation headquartered in Kearney, Nebraska, with a business address at 4400 E. Hwy. 30, Kearney, NE 68848-6010. Baldwin manufactured and sold Filters in the United States during the Relevant Time Period.

25.   Champion, Purolator, Honeywell, Wix, Donaldson, Cummins and Baldwin are collectively referred to herein as "Defendants."

## CO-CONSPIRATORS

26.   Wherever in this Complaint reference is made to any act, deed or transaction of any corporation, the allegation means that the corporation engaged in the act, deed or transaction by or through its officers, directors, agents, employees or representatives while they were actively engaged in the management, direction, control or transaction of the corporation's business affairs.

27.   The acts alleged in this Complaint engaged in by Defendants were performed by their officers, directors, agents, employees or representatives while engaged in the management, direction, control or transaction of the Defendants' business affairs.

28.   Various other persons, firms and corporations not named as Defendants herein have participated as co-conspirators in the violations alleged herein, and have aided, abetted and performed acts and made statements in furtherance thereof.

## INDUSTRY BACKGROUND

29. An oil filter is a device used to decontaminate oil that is found in nearly every vehicle sold in the United States. The filtration of oil in engines is essential for enhancing longevity and performance.

30. A fuel filter is a filter found in a vehicle's fuel line that screens out dirt and rust particles from the fuel. They are found in most internal combustion engines. Fuel filters improve a vehicle's performance, as the fewer contaminants present in the fuel, the more efficiently it can be burnt.

31. An air filter is a device used in an automotive engine to prevent abrasive particulates from entering the engine's cylinders. Most fuel-injected vehicles use a pleated paper filter element in the form of a flat panel.

32. A transmission filter prevents harmful contaminants from entering the hydraulic system where they can increase wear and cause scoring and sticking of hydraulic control valves. Additionally, if a major part fails inside the transmission, the filter may prevent pieces of that part from contributing to a more catastrophic transmission failure. Normally transmission filters trap metal chips from hard parts like gears and bushings and the normal fine material that results from wear of the hydraulic clutch facings and bands.

33. Filters are typically detachable units that require regular service or replacement. They are essentially fungible products.

34. Filter manufacturers, such as Defendants, sell Filters primarily to original equipment manufacturers (*i.e.*, vehicle manufacturers for installation of Filters into new vehicles on the production floor) and "aftermarket" sellers (*i.e.*, sellers for professional or

self-installation of replacement Filters). The allegations contained herein involve the Filters aftermarket.

35. Defendants are the primary manufacturers of aftermarket Filters in the United States.

36. Annual revenues for Filters are approximately $3-5 billion in the United States.

## DEFENDANTS' UNLAWFUL CONDUCT

37. During the Relevant Time Period, Defendants and their co-conspirators conspired, contracted or combined to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States. They accomplished this through, among other things, face-to-face meetings at industry trade shows and other locations and through the exchange of confidential communications regarding pricing.

38. The purpose of these secret, conspiratorial meetings, discussions and communications was to ensure that all of the Defendants agreed to participate in and implement an unlawful, continuing price-fixing scheme.

39. As a result of their unlawful agreement, Defendants implemented at least three coordinated price increases, rigged bids and allocated customers for Filters during the Relevant Time Period.

40. In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, including:

    (a) Attending meetings or otherwise engaging in discussions in the United States and elsewhere by telephone, facsimile and electronic mail regarding the sale of Filters;

(b) Agreeing to charge prices for Filters at specified levels, allocate customers, and otherwise fix, increase, maintain or stabilize the prices of Filters sold to purchasers in the United States;

(c) Agreeing not to compete for one another's customers by, among other things, not submitting prices or bids to certain customers, or by submitting intentionally high prices or bids to certain customers;

(d) Selling Filters to customers in the United States and elsewhere at collusive and non-competitive prices pursuant to the agreement reached;

(e) Accepting payment for Filters sold in the United States and elsewhere at collusive and non-competitive prices;

(f) Communicating with one another to discuss the prices, customers, markets and price levels of Filters sold in the United States;

(g) Authorizing or consenting to the participation of employees in the conspiracy; and

(h) Concealing the conspiracy and conspiratorial contacts through various means.

41. At least as early as January 1, 1999, Defendants and their co-conspirators had numerous confidential discussions with each other and exchanged extensive communications regarding pricing and customers. This conspiratorial conduct resulted in an unlawful agreement to fix, raise, maintain or stabilize prices, rig bids and allocate customers for Filters in the United States.

42. For example, on June 28, 1999, a Purolator senior executive faxed to his counterpart at Honeywell a letter which announced a 6%price increase on all Purolator-branded Filters, effective August 15, 1999.

43. Purolator did not send a price increase notification to its customers until more than two weeks later on July 14, 1999.

44. Defendants also had face-to-face meetings on the subject of their respective companies' contemplated price increases. One or more of these meetings took place in May 1999 at the Heritage Show in Nashville, Tennessee, a regular meeting of participants in the Filters industry. At this meeting, and others around this time, Defendants agreed, on behalf of their respective companies, to raise Filters prices, which they subsequently did pursuant to this agreement on numerous occasions.

45. At a meeting of Champion sales representatives in February 2004, Champion's President informed his sales team of Champion's proposed price increase, and instructed them to make sure Champion's competitors followed suit in terms of timing and amount pursuant to the Defendants' continuing agreement.

46. The Champion sales representatives followed the directive and met with Defendants' representatives to further the conspiracy.

47. Defendants engaged in continuous and ongoing face-to-face meetings to further their anticompetitive activities. Many of these meetings occurred at the annual Filter Council meeting held in Nashville, Tennessee. The Filter Council meeting was used as a vehicle to further the anticompetitive purposes of Defendants' unlawful conspiracy.

48. In an internal company e-mail from 2004 under the subject line "Price Increases," Champion confirmed that the other Defendants were "on board" with the amount of a coordinated price increase.

49. Pursuant to their unlawful agreement, Defendants each instituted similar price increases for Filters during the Relevant Time Period, including in 1999, early 2004 and late 2004/early 2005. These price increases were approximately 4%-6% each.

50. Defendants' conduct during the Relevant Time Period in collusively fixing, increasing, maintaining or stabilizing prices, rigging bids and allocating customers was for the sole purpose of foreclosing price competition in order to maintain artificially high prices for their Filters.

51. By coordinating their pricing activities and allocating customers, Defendants have removed from Plaintiff's members the ability to constrain Defendants' pricing by moving (or threatening to move) its Filter business from one Defendant to another in response to price increase.

52. Absent their coordinated activity, Defendants would have been forced to price Filters competitively or risk losing the significant business of their Filter customers, including Plaintiff's members business. With unrestrained competition, Defendants would have been forced to forego their price increases altogether, implement smaller ones, or even decrease their prices in order to retain these customers.

53. The likelihood that Defendants would have moderated their price increases or, indeed, decreased their prices is particularly strong in the face of Champion's developments in filter technology, which have reduced the amount of steel used in its Filters.

54. As a result of Defendants' unlawful conspiracy, Plaintiff's members have been forced to pay supracompetitive prices for Filters manufactured by Defendants.

## FRAUDULENT CONCEALMENT

55. Defendants fraudulently concealed their participation in the conspiracy alleged herein by, *inter alia*, engaging in secret meetings and communications in furtherance of the conspiracy, and by holding themselves out to the public and their customers, including Plaintiff's members, as true competitors.

56. Because of such fraudulent concealment and the inherently self-concealing nature of this conspiracy, Plaintiff's members could not have discovered the existence of this conspiracy until shortly before this action was commenced.

57. Defendants concealed their unlawful conspiracy in several ways, including public announcements that the price increases were due to the increases in the price of steel and that they were meeting the price increases of their competitors.

58. As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitation otherwise applicable to the allegations herein have been tolled.

## CLAIM FOR RELIEF

**(Sherman Act Section 1- Horizontal Price-Fixing Against All Defendants)**

59. Plaintiff repeats and re-alleges each and every allegation of this complaint as if fully set forth herein.

60. Beginning at least as early as January 1, 1999, and continuing thereafter through the present, the exact dates being unknown to Plaintiff, Defendants contracted, combined or conspired to fix, raise, maintain or stabilize prices, rig bids and allocate

customers of Filters in the United States, the purpose and effect of which is to maintain supracompetitive prices for their Filters. This conspiracy is illegal *per se* under Section 1 of the Sherman Act, 15 U.S.C. § 1, and therefore, Plaintiff is entitled to injunctive relief under Section 16 of the Clayton Act, 15 U.S.C. § 26.

61. This conspiracy consists of a continuing understanding and concert of action among Defendants to coordinate their Filter prices.

62. This conspiracy has foreclosed and restrained competition among Defendants, and caused Plaintiff's members to pay artificially high prices for Filters manufactured by Defendants.

63. As a direct and proximate result of the unlawful conduct of Defendants and their co-conspirators, as alleged herein, Plaintiff's individual members have been injured in their business and property in an amount not presently known in that they paid more during the Relevant Time Period for Filters than they otherwise would have paid in the absence of Defendants' unlawful conduct.

## **RELIEF SOUGHT**

WHEREFORE, Plaintiff respectfully requests the following relief:

A. That Defendants' unlawful combination, contract or conspiracy as alleged in this Complaint be declared, adjudicated and decreed a per se violation of Section 1 of the Sherman Act, 15 U.S.C. § 1; and

B. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents and employees thereof and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from, in any manner:

      (1)    continuing, maintaining or renewing the contract, combination or conspiracy alleged herein, or from engaging in any other contract, combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program or device having a similar purpose or effect; and

      (2)    communicating or causing to be communicated to any other person engaged in the manufacture, distribution or sale of Filters information concerning prices, customers, markets or other terms or conditions of sale of any such product except to the extent necessary in connection with bona fide sales transactions between the parties to such communications.

C.    That Plaintiff be awarded expenses and costs of suit, including reasonable attorneys' fees, to the extent provided by law; and

D.    That Plaintiff be awarded such additional relief as the Court may deem proper.

Dated: May 12, 2008

_____
Kerry R. Callahan (ct06569)
Doug Dubitsky (ct21558)
UPDIKE, KELLY & SPELLACY, P.C.
One State Street
Suite 2400
Hartford, CT 06103
Telephone: (860) 548-2600
Fax: (860) 548-2680

Marvin A. Miller
Matthew E. Van Tine
MILLER LAW LLC
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
Telephone: (312) 332-3400
Fax: (312) 676-2676

Brandon E. Lacoff
Greenwich Legal, LLC
175 West Putnam Avenue
2nd Floor
Greenwich, CT 06830
203-622-6001 (office)
1-800-805-9209 (fax)

*Counsel for Plaintiff*

Of Counsel:

Bernard Persky
Hollis L. Salzman

Eric J. Belfi
Gregory S. Asciolla
LABATON SUCHAROW LLP
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477